Harvey DRAKE d/b/a Drake's Sanita-
tion Service, and Drake's Sanitation,
Inc., Appellants,

v.

FAIRBANKS NORTH STAR
BOROUGH, Appellee.

No. S–895.

Supreme Court of Alaska.

March 21, 1986.

B. Richard Edwards, Law Offices of B.
Richard Edwards, Anchorage, for appel-
lants.

Michael B. Markham, Asst. Borough
Atty., Fairbanks, for appellee.

Before RABINOWITZ, C.J., and
BURKE, MATTHEWS, COMPTON and
MOORE, JJ.

OPINION

MATTHEWS, Justice.

The question in this case is whether Fair-
banks North Star Borough is improperly
providing a waste collection and disposal
service.

Garbage removal is classified as a
public utility service under AS 42.05.-
720(4)(F).[1] A company which provides a
public utility service must have a Certifi-
cate of Public Convenience and Necessity
from the Alaska Public Utilities Commis-
sion under AS 42.05.221(a).[2] The certifi-
cate has two functions. First, it specifies
the area in which the company providing

---

1. This statute defines "public utility" to include
the "furnishing [of] collection and disposal ser-
vice of garbage, refuse, trash or other waste
material."

2. The statute states: "A public utility may not
operate and receive compensation for providing
a commodity or service ... without first having
obtained from the [Public Utilities] commission
a certificate declaring that public convenience

the service may operate. AS 42.05.221(a).[3] And second, it prohibits local authorities from providing competing garbage service in the designated area, unless they buy out the holder of the certificate. AS 29.48.-033(b).[4]

Harvey Drake, appellant, has such a certificate. He claims that the appellee, Fairbanks North Star Borough, (Fairbanks) is competing in his service area.

Fairbanks opened an intermediate garbage collection site at North Pole, in Drake's service area. The North Pole site consists of a dumping floor, apparently exactly what its name implies—a large floor upon which the public dumps its garbage. After the public deposits its garbage at the site, Fairbanks employees compact it, load it on to trucks, and transfer it to a garbage plant and landfill at South Cushman—outside of Drake's service area. The North Pole site is not a final disposal site. All refuse goes to South Cushman for permanent disposal.

Prior to the opening of the North Pole site, the only other intermediate collection site was operated by Drake and located in his service area. That disposal site consists of a number of dumpsters.

Drake claims that he is losing revenues because the residents of the area now use the North Pole dumping floor instead of his collection site. Therefore, he argues that Fairbanks has in effect taken a part of his certificate without just compensation. Fairbanks argues that it has not encroached on Drake's certificate, and that, even if it has, Drake has not suffered any economic harm. Both parties moved for summary judgment. The trial judge grant-

ed summary judgment against Drake who has appealed.

No material facts are in dispute. With respect to the law, the Legislature has provided that a local government may not provide for a garbage *"collection and disposal service* in any area to the extent it lies within an area granted to a garbage, refuse, trash or other waste material carrier by a certificate issued by the commission." AS 29.48.033(b) (emphasis added).[5] The issue in this case is the meaning of "collection and disposal service."

We have addressed this issue in *McClellan v. Kenai Peninsula Borough*, 565 P.2d 175 (Alaska 1977). In *McClellan*, the Kenai Borough set up intermediate sites, i.e., dumpsters, for garbage collection and disposal. *Id.* at 176. It hired private companies to operate the sites and haul garbage to landfills. *Id.* Two other companies, however, held utility certificates for garbage collection and disposal in the Kenai Peninsula Borough. *Id.* We held that the Borough was liable for a partial taking of their certificates. *Id.* at 177.

*McClellan* concluded that collection is "the act or process of collecting," "something collected," or the "bring[ing] together into one body or place." *Id.* (quoting Webster's Seventh New Collegiate Dictionary (1969)). When we applied the definition in *McClellan*, we found that: "The fact pattern presented is clear on the point that refuse was gathered at the various intermediate sites and was hence collected." *Id.* We also stated that to permit the Borough to maintain intermediate garbage sites without paying compensation would

and necessity require or will require the service."

**3.** This statute states that: "A certificate shall describe the nature and extent of the authority granted in it, including, as appropriate for the services involved, a description of the authorized area and scope of operations of the public utility."

**4.** This section provides:
A political subdivision may not provide for a garbage, refuse, trash or other waste material collection and disposal service in any area to

the extent it lies within an area granted to a garbage, refuse, trash or other waste material carrier by a certificate issued by the commission to the carrier until it has purchased the certificate, equipment and facilities of the carrier or that portion of the certificate which would be affected at fair market value and may exercise the right of eminent domain to determine fair market value.

**5.** For the full text, see AS 29.48.033(b), *supra* note 4.

"completely vitiate the requirement of [the statutes] that certificate holders be compensated for their interests." *Id.*

On the meaning of "disposal," *McClellan* adopted the Alaska Public Utilities Commission's established definition. The Commission defined disposal as "the passing over of control of solid waste to the disposal site operator." *Id.* (emphasis omitted). Thus, the transport of refuse from the dumpsters to the landfill in *McClellan* amounted to "disposal" within the meaning of the statute. *See id.*

■ We hold that Fairbanks is engaging in garbage "collection and disposal" as *McClellan* defines these terms. Because of the structuring of Fairbanks' arguments, we deal with disposal before collection.

## A. *Disposal*

*McClellan* defines "disposal" as the passing over of control to the disposal site operator. *Id.* Although Fairbanks employees take control over the garbage at North Pole, the final act in the process of "disposal" occurs at South Cushman. When *McClellan* said that disposal meant the passing over of control to the disposal site operator, it meant at the final disposal site. The dispute in that case was over the right to transport refuse from intermediate dumpsters to "final landfill areas." *Id.* at 176. That was held to be a utility service. The final disposal site in this case is at South Cushman. Thus, when Fairbanks transports garbage from North Pole to South Cushman, it is engaging in "disposal." To the extent this occurs in Drake's service area, Drake deserves compensation.

To hold that the disposal site need not be final would make AS 29.48.033(b) meaningless. Nothing would prevent local governments from establishing numerous intermediate disposal sites in a certificate holder's area without compensation. Since the public would deposit its garbage directly at

these sites, the public would "pass over control" of its garbage at the intermediate sites. This is what we meant in *McClellan* when we rejected the argument that intermediate dumpsters were the functional equivalent of landfill sites: "[This] would allow the Borough to place dumpsters in such a pervasive fashion as to completely vitiate the requirement of AS 29.48.033(b) that certificate holders be compensated for their interests." 565 P.2d at 177.

Fairbanks contends, however, that the statute prevents it only from collecting garbage, but not from disposing of garbage. This is erroneous. The statute refers to both "collection *and* disposal." AS 29.48.-033(b) (emphasis added). Moreover, in *McClellan* we explicitly awarded damages against the Kenai Peninsula Borough because the Borough was providing a disposal service through non-certificate holders.[6]

■ Fairbanks attempts to draw a distinction between the dumpsters in *McClellan* and the site at North Pole. It contends that the Borough becomes the owner of the garbage which is deposited at the North Pole dumping floor, whereas the owners of the dumpsters become the owners of the garbage left at their dumpsters. Fairbanks' assumption is that the dumpsters in *McClellan* were privately owned. Even if this were correct, ownership of the garbage is irrelevant. Otherwise, Fairbanks could purchase its own dumpsters and place them throughout a certificate holder's area with impunity. This would evade AS 29.48.033(b) in just the manner prohibited in *McClellan*. Under *McClellan*, the only consideration is the location of the final disposal site. Since this is at South Cushman, the transfer at North Pole has no legal significance.

The only differences between the dumpsters in *McClellan* and the site at North Pole are that (1) the North Pole dumping floor is larger than the dumpsters; (2) the

**6.** After discussing the definition of "disposal" used by the Alaska Public Utilities Commission, we said: "We agree with this interpretation .... Therefore, we hold that the Borough of Kenai is

liable to the appellants for the fair market value of their certificates ... or that portion ... that would be affected." *Id.* at 177.

floor is permanent whereas the dumpsters are mobile; and (3) the North Pole employees must compact the garbage before they transfer it to South Cushman. These differences are without legal significance. North Pole is an intermediate holding facility for refuse on its way to South Cushman just as the dumpsters in *McClellan* were intermediate holding facilities for refuse on its way to the final landfills. They should be treated similarly.

### B. *Collection*

Fairbanks is also providing a garbage "collection" service within the meaning of AS 29.48.033(b). Indeed, Fairbanks seems to admit this. For example, it says that after refuse is left at the North Pole site "[t]here is no further collection" and "collection is over." These statements imply that collection occurs. The contention that the collection is complete once the public deposits the refuse is irrelevant. The Borough has, by operating the collection site, engaged in the "act or process of collecting" refuse. *McClellan*, 565 P.2d at 177.

In conclusion, we hold that summary judgment against Drake was improper because Fairbanks is providing a "collection and disposal" service. On remand, summary judgment should be granted in Drake's favor on the issue of liability. Just compensation must be determined at trial.

REVERSED and REMANDED.